# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### No. 5:08-CV-00342-FL

| | |
|---|---|
| ERIC M. MCMILLIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER and** |
| ) | **MEMORANDUM and** |
| ) | **RECOMMENDATION** |
| WAKE COUNTY SHERIFF'S ) | |
| DEPARTMENT, S. HARRIS, ) | |
| S. BALDWIN, and E. BARRERA, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion for summary judgment [DE-51] and on Plaintiff's motion to remove defendants' protective order and bar defendants' claim of qualified immunity [DE-47], motion to strike defendants' claims of qualified immunity [DE-48], motion of rediscovery [DE-53], motion for appointment of counsel [DE-58], and motion for production of documents [DE-60]. These motions were referred to the undersigned for entry of a memorandum and recommendation or disposition as appropriate and are ripe for decision.

### STATEMENT OF THE CASE

On August 15, 2008, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed the instant action alleging that Defendants used excessive force against him during his post-arrest detention and denied him medical treatment in violation of his Eighth Amendment rights. See Pl.'s Am. Compl. [DE-9]. Defendants filed their answer and asserted, among other things, that they were immune from Plaintiff's claims under the doctrine of qualified immunity. See Def.s' Answer [DE-16].

On October 16, 2008, Plaintiff filed a motion for discovery. [DE-24.] Defendants responded

by filing a motion for protective order seeking a determination on the issue of Defendants' qualified immunity prior to discovery. [DE-25.] The Court granted in part Defendants' motion, allowing limited discovery to proceed on the issue of qualified immunity and setting a deadline for the filing of dispositive motions related to qualified immunity. [DE-32 & 33.] Plaintiff filed multiple discovery motions [DE-37, 38, 39, 40, 42 & 44], most of which were denied because they sought discovery not related to the issue of qualified immunity. See April 13, 2009 Order [DE-41], June 2, 2009 Order [DE-45], & July 1, 2009 Order [DE-50].

On July 15, 2009, Defendants filed their motion for summary judgment. [DE-51.] Plaintiff responded by filing a motion for rediscovery seeking copies of various documents filed in this case [DE-53], three declarations regarding the factual allegations against the Defendants [DE-54, 55, & 56], a motion for appointment of counsel [DE-58], a sworn affidavit [DE-59] and motion for production of documents [DE-60]. The District Court re-characterized Plaintiff's sworn affidavit and motion for production of documents as responses to Defendants' motion for summary judgment. See August 17, 2009 Order [DE-61].

## STATEMENT OF THE FACTS

On July 9, 2008, Plaintiff was arrested and subsequently taken to the Wake County Jail. Aff. of Shea Harris ("Harris Aff.") ¶ 4 [DE-52]. Plaintiff was a "regular" at the Wake County Jail and was known by the jail staff to be mentally ill, aggressive and agitated, and suicidal. Id. ¶ 3. Plaintiff was processed and placed in a single holding cell, which he requested due to a claimed emotional disorder. Pl.'s Am. Compl. Attach. 1; Harris Aff. ¶ 6. Plaintiff then made several unsuccessful attempts to call his mother so she could post his bond. Pl.'s Am. Compl. Attach. 1. After some time

had passed, Officer Harris, accompanied by Officer Barrera and Officer Baldwin,[1] opened Plaintiff's cell and stated that Plaintiff was being moved for further processing. Id. At this point the parties' versions of events diverge.

Defendants claim that Plaintiff became agitated, slammed the phone against the wall, cursed at the Defendant Officers and hit the wall with his fist. Harris Aff. ¶ 7. Plaintiff was directed to exit the cell, which he did, and was escorted down the hall. Id. ¶ 8. Defendants claim that Plaintiff again became agitated and tore folders from the wall. Id. Officer Harris then directed Plaintiff to place his hands behind his back so that he could be handcuffed. Id. According to Defendants, Plaintiff then attacked Officer Harris, knocking Officer Harris to the floor and falling on top of Officer Harris. Id. Officers Barrera, Baldwin and Dupree and Sargent Koonce then removed Plaintiff from Officer Harris, handcuffed Plaintiff, and escorted Plaintiff to a new holding cell without further incident. Id. ¶ 9.

Plaintiff's amended complaint and other filings make no mention of the alleged outbursts described by Defendants. Plaintiff claims that, while he was being handcuffed, Officer Harris kicked him from behind, knocking him face down on the ground (Pl.'s Decl. [DE-56]), that Officer Barrera placed him in a choke hold (Pl.'s Am. Compl. Attach. 1), and that Officer Baldwin repeatedly struck him in the back of the head and kneed him in the right eye while Officers Barrera and Harris were sitting on his back (Pl.'s Am. Compl. at 2 & Attach. 1). As a result, Plaintiff claims he suffered hemorrhaging to his right eye and neck pain. Pl.'s Am. Compl. at 2 & Attach. 1. Plaintiff also claims that he was denied medical treatment for six days. Pl.'s Am. Compl. at 2.

---

[1] Officers Harris, Barrera and Baldwin are collectively referred to hereinafter as the "Defendant Officers."

3

Defendants deny that Plaintiff's alleged injuries resulted from the altercation with Officers Harris, Barrera, and Baldwin, and claim that Plaintiff received his injuries in a car accident prior to his arrival at the Wake County Jail. Aff. of Dr. Obi Umesi ("Umesi Aff.") ¶ 3. Defendants also dispute that Plaintiff was denied medical treatment for six days and assert that Plaintiff was seen by medical staff at the jail twice on July 10, 2008, and three times on July 11, 2008. Umesi Aff. ¶ 4.

Plaintiff denies that he threatened the officers and that his eye was injured prior to the alleged assault. Pl.'s Resps. to Def.s' Mot. for Summ. J. [DE-59, 60]. Plaintiff seeks monetary damages for pain and suffering, medical expenses, and legal fees and a reprimand of Officers Harris, Baldwin, and Barrera. Pl.'s Am. Compl. at 3.

## DISCUSSION

### I. Plaintiff's Motion to Appoint Counsel

Plaintiff requested counsel based on the fact that he is unable to afford an attorney and that he, at the time of his motion, was incarcerated. "[T]here is no absolute right to appointment of counsel; a plaintiff must present 'exceptional circumstances.' Exceptional circumstances exist where 'a pro se litigant has a colorable claim but lacks the capacity to present it.'" Hall v. Holsmith, 2009 WL 2171242, *1 (4th Cir. July 21, 2009) (unpublished op.) (internal citations omitted). The Court finds that the claims asserted by Plaintiff are not complicated and that he has vigorously and adequately presented his claims. Plaintiff's motion for appointment of counsel [DE-58] is denied.

### II. Defendants' Motion for Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. R. 56(c)(2); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the Court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on the motion. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993).

### B. Analysis

#### 1. Claims Against the Defendant Officers

The Defendant Officers contend that they are entitled to summary judgment based on the doctrine of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Pearson, 129 S. Ct. at 816. Accordingly, the Court must determine whether the facts alleged by the plaintiff "make out a violation of a constitutional right" and, if so, whether that right was "clearly established" at the time

of the alleged violation. Id.

### a. Excessive Force

In order to establish a constitutional claim for excessive force under the Due Process Clause of the Fourteenth Amendment, a plaintiff must show "the infliction of 'unnecessary and wanton pain and suffering.'" Farrar v. Hodge, 2007 WL 6515338, at *2 (E.D.N.C. Nov. 26, 2007) (citing Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006)). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Carr, 453 F.3d at 605. Additionally, the Fourth Circuit has instructed that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eight Amendment excessive force claim if his injury is *de minimis*."[2] Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc). Examples of such "extraordinary circumstances" are if the conduct resulted "in an impermissible infliction of pain" or was "of a sort repugnant to the conscience of mankind." Norman, 25 F.3d at 1264 n.4.

Viewing the facts in the light most favorable to Plaintiff, as the Court is required to do, Plaintiff suffered some bruising and hemorrhaging to his right eye and neck pain as a result of the use of force by Officers Harris, Barrera and Baldwin. Medical records submitted by Plaintiff indicate that, on July 16, 2008, Plaintiff was treated in the emergency room for a "subconjunctival hemorrhage" and neck pain and was instructed to take Naprosyn and Tylenol over-the-counter for his pain and to return to the emergency room for worsening eye or neck pain. Pl.'s Am. Compl.

---

[2] The Fourth Circuit has held that the Fourteenth Amendment, not the Eight Amendment, governs excessive force claims of pretrial detainees, such as Plaintiff was at the time of the alleged incident. See Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc). The Riley court did, however, recognize that these amendments share much in common on the matter of punishment, including a *de minimis* injury threshold for excessive force claims. Id. at 1166-67.

6

Attach. 2. Pictures submitted with Plaintiff's application to proceed *in forma pauperis*, apparently taken prior to Plaintiff's release from the Wake County Jail, show what appears to be bleeding into the white of his right eye. Pl.'s Appl. Ex. 1 & 2 [DE-1]. Plaintiff states that it was months before his "sight was fully recovered and irritation ceased." Pl.'s Decl. [DE-55].

Plaintiff's account of the incident that allegedly led to his injuries was essentially that there were no problems when he arrived at the jail and was initially processed and that the Defendant Officers spontaneously beat the Plaintiff without provocation. See Pl.'s Am. Compl. Plaintiff, in his unsworn response to Defendants' motion for summary judgment, generally denies that he threatened any of the Defendant Officers. However, he does not deny the allegations that he was agitated and that he was tearing folders from the wall, which according to Defendants resulted in the need to handcuff Plaintiff. The Court finds that, based on the undisputed fact that Plaintiff was in an agitated and disruptive state, the Defendant Officers' use of force was in a good faith effort to restore discipline and was not malicious and sadistic and for the very purpose of causing harm. See Norman, 25 F.3d at 1264 n.5 (concluding that defendant's allegation that plaintiff was creating a disturbance must be taken as true where plaintiff failed to deny it and that district court "properly held that the force was justified 'in a good faith effort to maintain or restore discipline[.]'") (citation omitted).

Alternatively, even if a question of fact existed as to whether the Defendant Officers used force against Plaintiff to restore discipline or to cause harm, Plaintiff has failed to show that his alleged injuries were more than *de minimis*. Plaintiff's injuries were bruising and hemorrhaging to his right eye and neck pain. These minor injuries appear inconsistent with the repeated punching and kicking to which Plaintiff alleged he was subjected by the Defendant Officers. Further, Plaintiff

states in his Amended Complaint that he was "examined and prescribed a mild pain reliever" for the injury to his eye, see Pl.'s Am. Compl., Attach. 1, and there is no evidence that he received more than minimal treatment. Similar injuries have consistently been found by other courts in the Fourth Circuit to be *de minimis*. See Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998) (finding that temporary swelling and irritation were *de minimis* injuries and that allegations that defendant placed a knee in plaintiff's back and pulled his head back and that plaintiff suffered numerous blows to the head were unsupported by the medical records); Farrar, 2007 WL 6515338, at *3 (finding that minor abrasions and swelling around the eye were *de minimis* injuries and consistent with being restrained and moved, not maliciously and sadistically beaten); Sowards v. McDuffie, 2009 WL 2516987, at *2 (W.D.N.C. Aug. 13, 2009) (finding that neck and back pain resulting from a physical assault were *de minimis* injuries); Smith v. Wetzel, 2009 WL 1360997, at *3 (W.D.N.C. May 12, 2009) (finding that a broken tooth, chipped tooth, and nose and back injury were *de minimis* injuries); Milton v. Wilson, 2008 WL 4643178, at *5 (D. S.C. Oct. 15, 2008) (finding that lacerations to the eye and lip and a broken tooth sustained when defendant forced plaintiff face down on the ground and handcuffed him were *de minimis* injuries).

The Court also concludes that the force allegedly used by the Defendant Officers is not "repugnant to the conscience of mankind" and did not inflict impermissible pain on Plaintiff such that it presents extraordinary circumstances to override the *de minimis* injury threshold. The Fourth Circuit has provided examples of such conduct, e.g. "forcibly pumping a suspect's stomach for evidence after unlawfully entering his house and bedroom" or "severely whipping and hanging a suspect in order to obtain a confession." Riley, 115 F.3d at 1168 n.4 (citations omitted). The conduct alleged in the present case falls far short of these types of extraordinary circumstances.

Having concluded that Plaintiff has not established a due process claim for excessive force, the Defendant Officers are entitled to qualified immunity because their alleged conduct did not violate a constitutional right. The Court recommends that the Defendant Officers be granted summary judgment on Plaintiff's excessive force claim.

### b. Denial of Medical Treatment

In order to establish a constitutional claim for denial of medical treatment under the Fourteenth Amendment, a plaintiff must (1) "objectively show that the deprivation suffered or the injury inflicted was sufficiently serious" and (2) "show that the defendant acted with deliberate indifference to his serious medical need." Scinto v. Preston, 170 Fed. Appx. 834, 835 (4th Cir. 2006) (unpublished op.). Importantly, the Fourth Circuit has concluded that a delay in medical care, with no resulting injury, does result in a constitutional claim. See Graham v. Stansberry, 2008 WL 3910689, at *8 n.6 (E.D.N.C. Aug. 20, 2008) (citing Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993)). While there is a dispute as to whether Plaintiff was denied medical care, it is not material because Plaintiff has alleged no injury as a result of any delay in receiving medical care.

Consequently, Plaintiff has not established a constitutional claim for denial of medical treatment, and the Defendant Officers are entitled to qualified immunity because their alleged conduct did not violate a constitutional right. The Court recommends that the Defendant Officers be granted summary judgment on Plaintiff's denial of medical treatment claim.

### 2. Claims Against the Wake County Sheriff's Department

As an initial matter, it is not clear that the Wake County Sheriff's Department is a legal entity amenable to suit. See Revene v. Charles County Commm'rs, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this

'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."). However, even if Plaintiff had sued the Sheriff or Wake County, those claims would not have survived summary judgment, because, as discussed above, Plaintiff failed to show that his constitutional rights were violated. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (concluding that a supervisor or the city can have no liability where the officer did not use "constitutionally excessive force") (citing Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.")). Accordingly, the Court recommends that the Wake County Sheriff's Department be granted summary judgment.

### III. Plaintiff's Miscellaneous Motions

Based on the Court's conclusion that Defendants are entitled to summary judgment based on qualified immunity, Plaintiff's motion to remove defendants' protective order and bar defendants' claim of qualified immunity [DE-47], motion to strike defendants' claims of qualified immunity [DE-48], and motion of rediscovery [DE-53] are **DENIED**.

### CONCLUSION

Plaintiff's motion to remove defendants' protective order and bar defendants' claim of qualified immunity [DE-47], motion to strike defendants' claims of qualified immunity [DE-48], motion of rediscovery [DE-53], and motion for appointment of counsel [DE-58] are **DENIED**.

The Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** [DE-51]. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written

objections. Failure to file timely written objections shall bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 15th day of January, 2010.

/s/ David W. Daniel
DAVID W. DANIEL
United States Magistrate Judge