IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-342-FL

| | | |
|---|---|---|
| ERIC M. MCMILLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WAKE COUNTY SHERIFF'S | ) | |
| DEPARTMENT; S. HARRIS; | ) | |
| S. BALDWIN; and E. BARRERA, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for summary judgment (DE # 51). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge David W. Daniel entered a memorandum and recommendation ("M&R") wherein he recommended the court grant defendants' motion (DE # 62). Plaintiff timely filed objection to the M&R (DE # 63), and defendants responded (DE # 65).[1] In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the magistrate judge's recommendation and grants defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff initiated the instant action on August 15, 2008, after receiving leave to proceed *in forma pauperis*, alleging that defendants used excessive force in detaining him, in violation of his constitutional rights. Defendants answered on September 17, 2008, denying the use of excessive force and asserting the

---

[1] The court earlier had cause to note that plaintiff's filing, though captioned as a motion for summary judgment and for injunctive relief, was properly construed as an objection to the M&R. (See DE # 64.) The time allotted to respond to such objection was enlarged in light of possible confusion as to the nature of this filing.

defense of qualified immunity. After plaintiff submitted a motion for discovery in response to this court's initial order soliciting a joint discovery plan, defendants sought a protective order against any discovery until their asserted defense of qualified immunity was evaluated by the court. Construing plaintiff's subsequently filed motion for summary judgment as a response to defendants' motion for protective order, the court denied plaintiff's motion for discovery as moot and referred the then-pending motions to the magistrate judge for resolution and for entry of a case management order ("CMO") structuring the further progress of this case.

On January 27, 2009, the magistrate judge entered an order granting in part defendants' protective order, but allowing discovery narrowly tailored to the issue of defendants' asserted qualified immunity claims. The magistrate judge then entered a CMO to govern progress of the case. Following entry of the CMO, plaintiff filed numerous motions seeking discovery on a range of issues not related to the issue of qualified immunity. Where these motions sought discovery outside the scope allowed by the protective order, they were denied.

On July 15, 2009, defendants moved for summary judgment, asserting qualified immunity among other grounds. Plaintiff timely responded, and the matter was referred to the magistrate judge by this court's order of August 18, 2009.[2] On January 15, 2010, the magistrate judge entered an M&R, in which he recommends granting defendants' motion for summary judgment. According to the magistrate judge,

---

[2] Also pending were five motions of plaintiff seeking, among other things, to remove the protective order, to begin further discovery, and to appoint counsel. These motions were referred to the magistrate judge for final disposition, and were denied by order entered January 15, 2010. Although these motions are not properly before the court, plaintiff attempts once more to raise issues related to appointment of counsel in his objection to the M&R. To the extent these issues merit additional review by this court, plaintiff's request for counsel is denied where exceptional circumstances are not present. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296, 300 (1989).

2

the undisputed facts showed that defendants' use of force was part of a good faith effort to restore discipline and was not malicious, sadistic, and for the purpose of causing harm. The magistrate judge further states that plaintiff makes no allegation of the type of serious injury required to establish a constitutional claim for denial of medical treatment, and that defendant Wake County Sheriff's Department is not a legal entity amenable to suit.

In his filing dated January 25, 2010, plaintiff objects to that portion of the M&R pertaining to his excessive force claim.[3] Conceding that defendant Wake County Sheriff's Office is not amenable to suit, plaintiff also requests leave to amend his complaint to name the correct party, and in the alternative asks this court to overlook this deficiency. In their response filed February 23, 2010, defendants refer the court to the arguments made in their motion for summary judgment, and suggest that the magistrate judge's reasoning in the M&R remains valid following the Supreme Court's recent decision in Wilkins v. Gaddy, 559 U.S. ---, 2010 WL 596513 (Feb. 22, 2010).

## STATEMENT OF THE FACTS

On July 9, 2008, plaintiff was arrested and taken to the Wake County Jail ("jail") at approximately 9:45 p.m. Plaintiff is well-known to jail staff, having been committed to their custody on a number of separate occasions since February 24, 2000. In the course of these frequent stays at the jail, the staff have come to know plaintiff as mentally ill, aggressive, and on many occasions suicidal. In the instant case,

---

[3] Plaintiff does not object to that portion of the M&R relating to the alleged denial of medical treatment. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the [M&R]." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citations omitted). After a careful review of the applicable law, the court is satisfied that plaintiff's allegations of denial of medical treatment were addressed adequately and without error by the magistrate judge.

3

plaintiff arrived smelling strongly of alcohol, and appeared agitated. During processing, he cursed at officers, slammed his property onto the counter, kicked his shoes off such that they were flung into the air, and disobeyed directives to keep his hands placed firmly against the wall during a pat down search of his outer clothing.

At the bonding desk, plaintiff claimed that he had an emotional disorder and demanded to be placed in a single holding cell. Jail personnel accommodated plaintiff's request, and he was placed in a cell across from the bonding desk pending medical screening and transfer to a housing floor. While in the cell, plaintiff made several unsuccessful attempts to call his mother so that she could post his bond. At some point thereafter, defendant Harris, accompanied by defendants Barrera and Baldwin ("defendants"), informed plaintiff that he was being moved for further processing.

Plaintiff became agitated, slammed the phone against the wall, and cursed at defendants. After plaintiff calmed down, he complied with defendants' directives to exit the cell. While being escorted down the hall, however, plaintiff again became agitated and began to tear folders down from the wall. Defendant Harris directed plaintiff to place his hands behind his back so that he could be handcuffed. The parties disagree as to what happened next.[4]

According to defendants, plaintiff then attacked defendant Harris, knocking him to the floor and falling on top of him. Defendants, as well as other staff not named in the complaint, removed plaintiff from

---

[4] The magistrate judge noted that "[p]laintiff's amended complaint and other filings make no mention of the alleged outbursts described by [d]efendants." (M&R 3.) Plaintiff's objection to the magistrate judge's findings, however, appears to explicitly acknowledge his agitated conduct, albeit framed in a softer light. According to plaintiff, "[T]he strike occured [sic] after my minor disturbance made over objections to being ordered from the telephone. In fact, [defendant] Harris already stated [plaintiff] was compliant until the folder became an issue of being riped [sic] from a glass frame." (Pl.'s Obj. 14.)

4

defendant Harris, handcuffed plaintiff, and continued to escort plaintiff to another holding cell without further incident. According to plaintiff, defendants handcuffed him, violently forced him to the ground, and proceeded to strike him in the head and knee him in the eye.[5]

As a result of this incident, plaintiff alleges that he suffered hemorrhaging to his right eye and neck pain. Plaintiff submits evidence that he was treated in the emergency room upon his release from jail, and was prescribed over-the-counter medication to alleviate this pain. Defendants deny that the injuries resulted from the incident, and contend that they instead were caused by plaintiff's car accident prior to his arrival at the jail.[6]

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

---

[5] The court notes some inconsistency between the events as related in the complaint and as related in plaintiff's subsequent filings. According to his complaint, plaintiff was "handcuff[ed] by [defendant] Harris, accompanied with a thorax choke hold by [defendant] Barrera," which "lead to my head being demobilized and kneed bluntly in my eye socket by [defendant] Baldwin as I lay flat on my stomach in handcuffs while the other two assailants sat firmly on my back." (Am. Compl. at Attach. 1.) In subsequent declarations filed in response to defendant's summary judgment motion, plaintiff claims that defendant Barrera "tackl[ed] [him] from behind . . . and administer[ed] handcuffs, followed by a series of 'malicious punches' to the back of the [plaintiff's] head" and that defendant Harris first "execut[ed] a 'flying drop kick' that sent [plaintiff] . . . 'face-down,'" then "proceeded to deliver excruciating fist to the back of [plaintiff's] head as . . . [defendant] Barrera cuffed the plaintiff and sat on his back." (Pl.'s Decl. [DE # 52]; Pl.'s Decl. [DE # 54].) In assessing plaintiff's claims, the court has attempted to liberally construe the facts as alleged.

[6] Plaintiff also alleges that he was denied medical treatment for six days, while defendants contend that he was seen on multiple occasions by medical staff on July 10 and 11, 2008. Because, as noted, plaintiff does not object to that portion of the M&R relating to the alleged denial of medical treatment, these facts are not pertinent to the court's inquiry.

5

U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Excessive Force Claim

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In order to determine whether qualified immunity applies, the court must decide (1) "whether a constitutional right would have been violated on the facts alleged" and (2) "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (citation omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by Pearson v. Callahan, 555 U.S. ---, 129 S.Ct. 808 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 129 S.Ct. at 821.

Turning first to the question of whether violation of a constitutional right has been alleged on the

6

facts presented, the court finds that defendants are entitled to qualified immunity because plaintiff fails to demonstrate a constitutional violation. To establish a constitutional claim for excessive force under the Fourteenth Amendment, "plaintiff must first demonstrate that '[d]efendants inflicted unnecessary and wanton pain and suffering' upon [him]." Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006) (quoting Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting Taylor, 155 F.3d at 483). It is the force applied, not the injury sustained, that "ultimately counts" in whether there has been a constitutional violation. Wilkins, 559 U.S. ---, 2010 WL 596513 at *3.

It is undisputed that plaintiff became agitated while being transferred from one holding cell to another, and began to deface jail property by tearing folders from the wall. It is further undisputed that these actions served as the impetus for restraining plaintiff. Finally, the evidence before the court demonstrates *de minimis* eye and neck injury consistent with the amount of force reasonably necessary to subdue plaintiff in light of this outburst, and inconsistent with the force from a "malicious" or "sadistic" beating of plaintiff.[7] See, e.g., Farrar v. Hodge, No. 5:06-CT-3079-D, 2007 WL 6515338, at *3 (E.D.N.C. Nov. 26, 2007), aff'd, 291 F. App'x 503 (4th Cir. 2008) (unpublished). In light of this undisputed evidence, the court finds that defendants' use of force was in a good faith effort to restore discipline and was not malicious or sadistic or for the very purpose of harming plaintiff.

---

[7] Although the Supreme Court has made clear that a court must not "giv[e] decisive weigh to the purportedly *de minimis* nature of [an inmate's] injuries," Wilkins, 559 U.S. at ---, 2010 WL 596513 at *3, it also has reaffirmed that "[t]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," id at *2 (citations and internal quotation omitted). "The extent of injury may also provide some indication of the amount of force applied." Id.

Having concluded that a constitutional right was not violated on the facts alleged, the court need not engage in the second step of the qualified immunity analysis. As recommended by the magistrate judge, the court finds that defendants are entitled to qualified immunity as to plaintiff's excessive force claim. Defendants' motion for summary judgment is granted.

C.  Claims Against Wake County Sheriff's Department

Plaintiff does not contend that the magistrate judge erred in finding that defendant Wake County Sheriff's Department is not a legal entity amenable to suit. See Revene v. Charles County Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989). He instead asks for leave to amend his complaint to name either the Sheriff or Wake County. The court finds that such amendment would be futile, however, where the individual defendants have been granted summary judgment on qualified immunity grounds because there was no showing of a violation of plaintiff's constitutional rights. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996); Moore v. Cease, No. 7:03-CV-144-FL-1, 2005 WL 5322794, at *22 (E.D.N.C. July 5, 2005). Accordingly, the motion for summary judgment for defendant Wake County Sheriff's Department is granted.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and after a careful review of those portions of the M&R to which no objection has been made, the court ADOPTS the findings of the magistrate judge (DE # 62) as its own, and GRANTS defendants' motion for summary judgment (DE # 51). The clerk is DIRECTED to close the case.

SO ORDERED, this the 7th day of March, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge